# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Dunet v. Simmons*, 2013 IL App (1st) 120603**

---

| | |
|---|---|
| Appellate Court Caption | DIANE DUNET, Independent Administrator of the Estate of JOAN ORTH, Deceased, Plaintiff-Appellant, v. CLARENCE SIMMONS, VILLAGE OF OAK LAWN, a Municipal Corporation, and EXELON CORPORATION, DBA COMMONWEALTH EDISON, an Illinois Corporation, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-12-0603 |
| Filed | April 23, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the fatal injuries suffered by plaintiff's decedent when she was struck by defendant's vehicle while crossing a street in defendant village, summary judgment was properly entered for the village and defendant power company, notwithstanding the fact that the streetlights were not operating at the location of the accident, since decedent was not in a marked crosswalk when she was hit, she was not shown to be an intended user of the street, defendants owed her no duty, and the inoperable streetlights were merely a condition, not a proximate cause, of her death. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-2834; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Morici, Figlioli & Associates, of Chicago (James J. Morici, Jr., and Michael G. Miller, of counsel), for appellant.

Ripes, Nelson, Baggot & Kalobratsos, P.C. (Michael J. Ripes, of counsel), Querrey & Harrow, Ltd. (David Flynn and Brandon K. Lemley, of counsel), Johnson & Bell, Ltd. (John W. Bell, Robert R. McNamara, and Meghan M. Sciortino, of counsel), Schopf & Weiss, LLP (Steven A. Weiss and Kristen E. Hudson, of counsel), all of Chicago, for appellees.

Panel

PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.

Justices Connors and Simon concurred in the judgment and opinion.

## OPINION

¶ 1    Dianne Dunet, as the independent administrator of the estate of Joan M. Orth, filed her first amended complaint against Clarence Simmons[1], the Village of Oak Lawn, Illinois, and Exelon Corporation, doing business as Commonwealth Edison, an Illinois corporation (ComEd). Dunet alleged that a car driven by Simmons struck and killed Joan M. Orth (decedent) as she crossed 95th Street "at or near" its intersection with Kenton Avenue in Oak Lawn. It is undisputed that at the time of the accident, the streetlights near the intersection were inoperable and that decedent did not cross in a marked crosswalk. Dunet brought a wrongful death and survival action against Oak Lawn alleging Oak Lawn's conduct regarding the inoperable streetlights was both negligent and willful and wanton conduct. Against ComEd, Dunet brought a wrongful death and survival action based on negligence only. ComEd and Oak Lawn filed separate summary judgment motions pursuant to section 2-1005 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2010)), which the circuit court granted. At issue is whether decedent was an intended user of 95th Street. We hold the circuit court properly entered summary judgment because decedent pedestrian was not an intended user of 95th Street at its intersection with Kenton Avenue in Oak Lawn. Therefore, Dunet failed to establish that decedent was owed a duty.

¶ 2                                JURISDICTION

¶ 3    On January 27, 2012, the circuit court granted Oak Lawn's and ComEd's respective motions for summary judgment. The circuit court entered a finding that there was no just cause to delay enforcement or appeal pursuant to Illinois Supreme Court Rule 304(a). Ill. S.

---

[1]Simmons is not a party to this appeal.

Ct. R. 304(a) (eff. Feb. 26, 2010). On February 23, 2012, Dunet timely appealed. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 304(a). Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).

¶ 4                                                    BACKGROUND

¶ 5        On October 22, 2010, Dunet filed her first amended complaint against Simmons, Oak Lawn, and ComEd. Dunet alleged that on November 9, 2001, a car driven by Simmons struck and killed decedent as decedent crossed 95th Street "at or near" its intersection with Kenton Avenue in Oak Lawn. On that date, the overhead streetlights near the intersection were not in working order. In the counts of her complaint against Oak Lawn, Dunet alleged a wrongful death and survival action based on Oak Lawn's alleged negligent and willful and wanton conduct regarding the inoperable streetlights. Specifically, Dunet alleged Oak Lawn permitted the overhead streetlights to be inoperable, failed to repair the overhead streetlights, did not maintain the overhead streetlights, and created a hazardous condition due to the lack of illumination at the intersection. These actions, according to Dunet, proximately caused decedent's death. In the counts of her complaint against ComEd, Dunet alleged a wrongful death and survival action based on ComEd's alleged negligent conduct. Specifically, Dunet alleged Comed negligently caused an interruption of the power supply, negligently caused a short to occur in the electrical control box, negligently failed to restore the electrical supply, and negligently failed to warn pedestrians that the lights were inoperable. These actions, according to Dunet, proximately caused decedent's death. Both Oak Lawn and ComEd denied all material allegations in their respective answers to Dunet's complaint.

¶ 6        On September 19, 2011, Oak Lawn and ComEd each filed separate motions for summary judgment pursuant to section 2-1005 of the Code. 735 ILCS 5/2-1005 (West 2010). Oak Lawn argued that it did not owe decedent a duty because she was not an intended and permitted user of the street where the accident occurred according to section 3-102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-102(a) (West 2010)). Oak Lawn pointed out that decedent did not cross 95th Street at a marked crosswalk. Additionally, Oak Lawn asserted that the inoperable streetlights were not the proximate cause of the accident. Oak Lawn acknowledged that the issue of proximate cause is typically determined by the trier of fact, but argued that summary judgment is appropriate where, as in this case, the facts show that the plaintiff would never be entitled to recover. According to Oak Lawn, the darkened conditions may have made it more difficult to see, but the inoperable lighting only "presented an opportunity for the accident but did not cause the accident." As such, Oak Lawn argued that the inoperable streetlights were a condition, but not the cause of the accident. Oak Lawn further argued that the intervening negligence of Simmons, the driver of the automobile, and decedent, the pedestrian, severed any negligence on the part of Oak Lawn. Specifically, decedent crossed 95th Street outside of a crosswalk and failed to yield the right of way to the oncoming traffic; Simmons, had his headlights turned on and still failed to see decedent until after impact. Oak Lawn attached to its motion a copy of the first amended complaint, its answer, and deposition testimony from Simmons, Robert Weinert, Jr., and Michael Wilson.

¶ 7        Simmons, a retired truck and bus driver, testified that the accident in question occurred about 5:45 p.m. on November 9, 2009. His car, including his headlights, was in good working order. It was dark outside. Simmons was traveling westbound on 95th Street in the left hand lane, which was the lane closest to the center line. He was traveling at about 30 miles per hour, which was the speed limit on 95th Street. At Kenton Avenue, Simmons struck decedent. He never saw her before impact. Simmons applied the brakes and his car skidded until it stopped. There were skid marks on the road. Decedent was either thrown off or fell off the front of Simmon's car. Decedent's body came to rest about 19 feet ahead of Simmon's car.

¶ 8        Simmons agreed that the area was very dark at the time of the occurrence and that the streetlights were out both to the east and to the west of 95th Street. Both headlights of Simmon's car were turned on at the time of the collision. He agreed that the lights from the nearby car dealership did not provide much light to the intersection. Simmons answered "Yes" when asked the following questions: whether decedent crossed at the intersection as opposed to "crossing in the middle of the block or walking in the middle of the block"; whether "it was just too dark to be able to see a pedestrian"; and whether he kept "a safe and proper lookout" while driving.

¶ 9        Weinert testified that at the time of the accident, he worked at the car dealership, located on 95th Street, as "a porter or lot man." He thought the accident occurred at approximately 5:30 in the evening. The weather was cold that day, but there was not any snow, and conditions were "[f]airly dry." It was dark and there was no natural light present. He described the lighting conditions as "extremely poor" because "[t]he lights on 95th street were out." Weinert could not recall if it was cloudy or not. Weinert testified that the dealership has lights that were "bright enough to light up our own lot," but did not, however, illuminate 95th Street. He could not recall if the streetlights were also out on Kenton Avenue.

¶ 10        Weinert first saw decedent when he was walking eastbound on 95th Street, but it was too dark "to put a face or body together." At the time, he was with Michael Wilson, "walking the lot," both to look for his misplaced cell phone and because the dealership would "rearrange [its] used car display everyday." He described the accident as such:

      "Q. As you're normally walking down eastbound 95th street, what drew your attention to this pedestrian?

      A. She was the only one out there besides us, okay, and to ultimately see her begin to cross the road, but I looked away, I was not paying attention at that point. I figure, you know, people cross there all the time. Then what made me turn back up is when I heard the impact.

      Q. Okay. Let's take a step back in terms of you say 'people cross there all the time.' Where did you observe the pedestrian crossing?

      A. It was a barbershop across the street that's on Kenton. It's across the street though. There is a bus stop there, okay, and she was beginning to cross. People cross there all the time because that bus lets off plenty of people."

Weinert did not see decedent getting off the bus, but he did see a bus drive by. Decedent's back was facing Weinert when he observed her. Weinert agreed that 95th Street did not have

a traffic control device and that there was no designated crosswalk for pedestrians seeking to cross 95th Street at Kenton Avenue. The closest designated crosswalk to Kenton Avenue and 95th Street is approximately two blocks away at 95th and Cicero. Weinert testified decedent "was attempting to go corner to corner so not J walking of any sort." He defined "J walking" as "[w]alking to adjacent corners" on a diagonal route. Weinert stated that decedent "was about three lanes in *** the furthest lane of westbound traffic," which was the lane closest to the median. Although he observed decedent leave the sidewalk and begin to cross the street, he testified that he "didn't pay too much attention." The next thing he heard was the sound of impact and screeching tires. He stated further that he "saw [decedent] actually get hit by the car, and when he locked up his brakes, that is when she began to fly off the car, roughly about 15 feet." He testified that "[t]he impact occurred roughly around Kenton Avenue." Weinert recalled that the car did have its lights on. Weinert testified that at the time of the accident, traffic was not "too heavy" but described 95th Street as typically "extremely" busy. It was dark enough that cars traveling on 95th Street had their headlights on. He estimated that he was approximately 50 feet away from the accident.

¶ 11    Wilson, during his deposition, remembered that the accident occurred between 5:30 and 6 in the evening. When asked whether he witnessed the accident, Wilson answered "[n]ot from beginning to start or from start to end, but, yeah, I did witness it." He clarified that he saw the impact, which he described as "[f]rom the screeching of the tires to the lady being hit and then ending on the ground." At the time, he was at "the north end of 95th and the west side of Kenton." He also worked as a "porter or a lot man" for the dealership. He was with Weinert, looking for Weinert's lost cell phone, at the time of the accident. Wilson described the weather on the day in question as a "[r]egular fall day," not raining, and "[f]or the most part, it was clear." He testified that it was dark outside, that "it was like driving down a country road" and that "it was weird." The lights from the dealership do not spill out onto 95th Street. When asked whether it was difficult to observe vehicles on 95th Street at the time of the incident, Wilson answered "Yeah. I mean all you would see is the headlights. You wouldn't from their own cars, but yeah, I mean, it was dark." He testified further that there is no crosswalk crossing 95th Street going north or south, but the nearest crosswalks were located west at Cicero or east at Pulaski.

¶ 12    When asked when he first saw decedent, Wilson answered "was when [he] heard the screeching of the tires. That's what made [him] turn around and look, and then [he] saw her be hit by the car." He estimated he was approximately "three and a half car lengths" from the accident. He stated that the accident occurred "right at the intersection." The north and southbound lanes of Kenton are controlled by a stop sign, but there was not a crosswalk across 95th Street. He could not tell if the driver's lights were on prior to its impact with decedent, but he did observe that the car's headlights were on immediately after the accident. He testified that decedent was not running across 95th Street. Wilson described traffic that day as "light."

¶ 13    ComEd, in its motion for summary judgment, noted that it did not dispute that the streetlights were not operating at the intersection at the time of the accident, but also stressed that it was undisputed that there was no designated crosswalk at the intersection. Like Oak Lawn, ComEd argued that the inoperable streetlights merely created a condition and did not

proximately cause decedent's injuries. ComEd maintained that the independent actions of decedent, as a pedestrian who failed to cross the street at a marked crosswalk, and of Simmons, the driver who failed to keep a proper lookout, proximately caused the accident. ComEd stressed that it "cannot be held legally responsible for the remote risk that someone, when encountering a major roadway that has been rendered dark due to a power shutdown, will disregard the rules of the road and cross the street outside of a crosswalk or fail to keep a proper lookout for pedestrians who may be jaywalking across the street." In the alternative, ComEd argued decedent was not owed a duty because she was not an intended user of the street. As exhibits, ComEd attached a copy of Dunet's first amended complaint and a copy of Weinert's deposition testimony.

¶ 14 Dunet filed separate, but identical responses. Dunet argued that the darkness created by the inoperable streetlights was a material and substantial element causing decedent's injury. Therefore, there was a genuine issue of material fact regarding whether either defendant's negligence proximately caused decedent's death. Dunet maintains that it was foreseeable that an accident such as the one in this case could occur on a darkened six-lane roadway. Dunet additionally argued that decedent crossed 95th Street in a crosswalk as defined by section 1-113(a) of the Illinois Vehicle Code (Vehicle Code). 625 ILCS 5/1-113(a) (West 2010). Therefore, according to Dunet, section 3-102(a) of the Tort Immunity Act did not apply and the defendants owed decedent a duty of care. In addition to exhibits already provided by Oak Lawn and ComEd, Dunet also attached the deposition testimony of Gerald P. Chickerillo.

¶ 15 Chickerillo testified he was the "Street Division manager" for Oak Lawn at the time of the accident. He stated that the intersection of 95th Street and Kenton Avenue does not have any "traffic control." He stated 95th Street is a "state highway" and a through street at its intersection with Kenton Avenue. Kenton Avenue does have a stop sign for drivers entering onto 95th Street. He described 95th Street as "one of two major arterial roadways" in Oak Lawn. He agreed that 95th Street is a high-volume street. 95th Street has a total of six lanes, three going east and three going west. Chickerillo was in charge of repairing the streetlight power outage, which was caused by the meter socket on the back of the control box melting down both the meter socket and the meter, which then had to be replaced. The lights went out sometime on November 4, 2009. He could not recall what time of day he was notified of the lights being out. After an employee determined the problem that occurred, Chickerillo then promptly called ComEd to de-energize the control box, which caused every streetlight for a half of a mile on 95th Street to be out. He could not specifically recall when he contacted ComEd, but estimated it to be between 12 and 2 in the afternoon. ComEd shut the power off at 9 a.m. on November 5. Repairs were actually completed on November 6, but the lights were not operational until November 10. He notified ComEd on November 6 that power to the lights had to be restored. He again called ComEd on November 7, but was told "the work order had been put out to central processing or their dispatch center or call center." He called ComEd again, maybe "once, maybe twice" on Sunday, November 8. He emailed ComEd on November 9. The lights came back on Tuesday, November 10.

¶ 16 In reply, Oak Lawn maintained that it did not owe decedent a duty and that any alleged act or omission to act on its part did not proximately cause decedent's death. Due to decedent's failure to cross in a marked crosswalk, decedent was not an intended or permitted

user under section 3-102(a) of the Tort Immunity Act. Oak Lawn relied on section 11-1003(c) of the Vehicle Code (625 ILCS 5/11-1003(c) (West 2010)) to argue that pedestrians need to cross at a marked crosswalk. Oak Lawn pointed out that Dunet does not even try to argue that decedent crossed at a marked crosswalk, nor does she take into account whether Oak Lawn intended pedestrians to cross at that intersection. Rather, the existence of nearby marked and controlled crosswalks indicates that Oak Lawn did not intend for pedestrians to cross where decedent was injured. As for the proximate cause issue, Oak Lawn maintained that the actions of decedent were the intervening cause of the accident.

¶ 17    ComEd, in its reply, pointed out that the following facts were undisputed: that decedent died after being struck by Simmons' car while attempting to cross 95th Street; that there was no marked crosswalk at this intersection; and that the streetlights at or near the intersection were not working at the time of the accident. Like Oak Lawn, ComEd asserted that the darkened conditions were merely a condition and not the proximate cause of decedent's death, and in the alternative, that decedent was not owed a duty of care as she was not an intended or permitted user of the street. In addition to Weinert's deposition testimony, ComEd also attached photographs of the intersection. The photographs showed that 95th Street at its intersection with Kenton Avenue, where pedestrian crossed, did not have a marked crosswalk or traffic signals. The curb was painted yellow and was not cut out or sloped.

¶ 18    The circuit court granted both Oak Lawn's and ComEd's motions for summary judgment on January 27, 2012. The circuit court first noted that it was undisputed that decedent failed to cross the street at a marked crosswalk before finding that there was also no evidence that decedent crossed the street in an unmarked crosswalk. The circuit court found that the evidence established only that decedent crossed the street near the intersection rather than midblock. There was no evidence that there was an unmarked crosswalk or that the area where decedent crossed was intended to be an unmarked crosswalk. The circuit court further noted that the existence of marked crosswalks, complete with traffic lights and sloped curbs, at the adjacent intersections to the intersection at issue here, indicates that the area where decedent crossed the street was not intended for pedestrians. The existence of traffic lights at the adjacent intersections also indicated, under section 11-1003(c) of the Vehicle Code, that decedent was required to cross the street at a marked crosswalk due to the existence of those traffic lights. Accordingly, the circuit court found that "[t]he facts and evidence here show[ ] that the Decedent was not in a crosswalk at the time of the accident and was, thus, not an intended and permitted user of the [street] and the moving Defendants owed not duty to her."

¶ 19    The circuit court further found that summary judgment for the defendants was proper because the inoperable streetlights were a condition, not the proximate cause, of the incident that led to decedent's death. Specifically, the court found:

"[T]he lack of overhead streetlights in the area where the accident occurred merely furnished a condition which made the accident possible. Even if the Defendants were negligent with respect to the street light outage, they could not have anticipated or foreseen that drivers would fail to keep a proper lookout and that pedestrians would proceed to cross a busy street without the benefit of a crosswalk or traffic signals and fail

-7-

to give the vehicles the right-of-way."

¶ 20    On February 23, Dunet timely filed her notice of appeal.

¶ 21                                  ANALYSIS

¶ 22    Before this court, Dunet argues that the circuit court's findings that decedent was not an intended or permitted user of the street at the time of the accident was in error. According to Dunet, decedent was an intended and permitted user of the street because she crossed 95th Street within an unmarked crosswalk as defined by section 1-113(a) of the Vehicle Code. 625 ILCS 5/1-113(a) (West 2010).

¶ 23    In response, ComEd argues that Dunet failed to show that a duty was owed to decedent under the Tort Immunity Act and that decedent was not an intended and permitted user of the street because decedent was not in a crosswalk at the time of the accident. In addition to arguing that no duty was owed to decedent, Oak Lawn also argues that Dunet made no argument concerning what Oak Lawn's intended use of the property was. Oak Lawn further argues that Dunet presented no evidence that decedent was even within the confines of the so called unmarked crosswalk. Rather, according to Oak Lawn, Dunet only presented evidence that decedent was near the intersection.

¶ 24    In reply, Dunet clarified that she believes that the combined negligence of ComEd and Oak Lawn played a material and substantial role in decedent's death. Dunet argues that abundant eyewitness testimony places decedent within a crosswalk as defined by section 1-113(a) of the Vehicle Code. 625 ILCS 5/1-113(a) (West 2010).

¶ 25    Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). In ruling on a motion for summary judgment, the circuit court is to determine whether a genuine issue of material fact exists, not try a question of fact. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). A party opposing a motion for summary judgment "must present a factual basis which would arguably entitle him to a judgment." *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 256 (1996). When determining whether a genuine issue of material fact exists, the pleadings are to be liberally construed in favor of the nonmoving party. *Williams*, 228 Ill. 2d at 417. Summary judgment in favor of a defendant is proper where the plaintiff fails to establish an element of a cause of action. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). We review summary judgment rulings *de novo*. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995).

¶ 26    A plaintiff alleging negligence must establish that defendant owed a duty of care to the plaintiff, that defendant breached that duty of care, and that the defendant's breach proximately caused injuries to the plaintiff. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 340 (2003). The determination of whether a defendant owes a plaintiff a duty of care is a question of law decided by the court and may appropriately be resolved by a summary judgment motion. *Curatola v. Village of Niles*, 154 Ill. 2d 201, 207 (1993). A defendant is entitled to summary judgment, as a matter of law, where the court finds the defendant did not

owe the plaintiff a duty of care. *O'Hara v. Holy Cross Hospital*, 137 Ill. 2d 332, 337 (1990).

¶ 27    The duty of a municipality to maintain its property is limited by the Tort Immunity Act. *Sisk v. Williamson County*, 167 Ill. 2d 343, 346-47 (1995). Section 3-102 of the Tort Immunity Act provides, in relevant part:

> "(a) *** a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people *whom the entity intended and permitted* to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that it is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." (Emphasis added.) 745 ILCS 10/3-102(a) (West 2010).

We must strictly construe the provisions of the Tort Immunity Act against the public entity because the Tort Immunity Act "is in derogation of the common law." *Curatola v. Village of Niles*, 154 Ill. 2d 201, 208 (1993).

¶ 28    Under section 3-102(a) of the Tort Immunity Act, municipalities have a duty to exercise ordinary care "to maintain property for uses that are *both* permitted *and intended*." (Emphases in original.) *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 160 (1995). A duty will not be imposed on a municipality unless the plaintiff is both a legally permitted user of the property and an intended user. *Id.* The general rule in Illinois is that a municipality does not owe a duty of reasonable care to pedestrians who walk in a street outside of a crosswalk because they are not intended users of the street. *Sisk*, 167 Ill. 2d at 347. Our supreme court has stated that "although pedestrians may be permitted users, they are not intended users of streets outside of *marked* crosswalks or other areas designated and intended for the protection of pedestrians." (Emphasis added.) *Id.* at 349. To determine whether a user is a permitted and intended user, we must look to the nature of the property itself. *Vaughn*, 166 Ill. 2d at 163; see also *Sisk*, 167 Ill. 2d at 351 ("Intent must be inferred from the circumstances. We need look no further than the property itself to determine the municipality's manifestations of intent with regard to use of the property by pedestrians."). Section 3-102(a) makes clear that the intent of the municipality "is controlling." *Boub v. Township of Wayne*, 183 Ill. 2d 520, 525 (1998). Therefore, "the intent of another public body, whether it is the state, a county, or other local entity, should be irrelevant." *Id.* at 529. To determine a municipality's intent, "it is necessary to look at pavement markings, signs, and other physical manifestations of the intended use of the property." *Id.* at 528; *Sisk*, 167 Ill. 2d at 351. This includes both "the presence or absence of special pavement markings and signs." *Boub*, 183 Ill. 2d at 528. Further, "an intended user of property is, by definition, also a permitted user; a permitted user of property, however, is not necessarily an intended user." *Id.* at 524.

¶ 29    In this case, we hold that decedent was not an intended user of 95th Street at its intersection with Kenton Avenue. The evidence of the nature of the property shows that pedestrians, such as decedent in this case, were not intended to cross the street where the accident occurred. *Sisk*, 167 Ill. 2d at 351 ("We need look no further than the property itself to determine the municipality's manifestations of intent with regard to use of the property by

pedestrians."). It is undisputed that there is not a marked crosswalk at the intersection. *Id.* at 349 ("Illinois courts have concluded that although pedestrians may be permitted users, they are not intended users of streets outside of *marked* crosswalks or other areas designated and intended for the protection of pedestrians." (Emphasis added.)). It was also shown that the curb bordering 95th Street was painted yellow, and was not cut out or sloped for pedestrian access to 95th Street. The nearby intersections of 95th Street and Cicero and 95th and Pulaski did have traffic signals with marked crosswalks for pedestrian crossings. Additionally, the evidence showed that 95th Street was a busy, high-volume street that contained six lanes of traffic. Therefore, we hold that the nature of the property itself strongly indicates that pedestrians, such as decedent in this case, were not intended users of 95th Street at its intersection with Kenton Avenue.

¶ 30 Although Dunet argues that decedent was an intended user, the only authority she relies upon is section 1-113(a) of the Vehicle Code. 625 ILCS 5/1-113(a) (West 2010). Section 1-113(a) of the Vehicle Code defines crosswalk as such:

"That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or, in the absence of curbs, from the edges of the traversable roadway, and in the absence of a sidewalk on one side of the highway, that part of the highway included within the extension of the lateral line of the existing sidewalk to the side of the highway without the sidewalk, with such extension forming a right angle to the centerline of the highway[.]" 625 ILCS 5/1-113(a) (West 2010).

Specifically, she alleges that decedent was in an "unmarked crosswalk" according to section 1-113(a) of the Vehicle Code. 625 ILCS 5/1-113(a) (West 2010). Dunet's argument fails because, at best, it only shows that decedent was a permitted user of the property. Dunet, however, has to show that decedent was both a permitted and an intended user of the property. *Vaughn*, 166 Ill. 2d at 160. Decedent being a permitted user does not automatically make decedent an intended user. *Boub*, 183 Ill. 2d at 524. As discussed *supra*, the nature of the property in question here shows that Oak Lawn did not intend for pedestrians, such as decedent, to cross 95th Street at its intersection with Kenton Avenue. Dunet presented no evidence, nor made any argument, to show that decedent was also an intended user of the street. Instead of presenting any evidence of Oak Lawn's intended use of the property, Dunet only presented a statute passed by the state legislature. Our supreme court has stressed that "under section 3-102(a) of the Tort Immunity Act it is the intent of the local public entity that controls; accordingly, the intent of another public body, whether it is the state, a county, or other local entity, should be irrelevant." *Id.* at 529. Dunet did not present any evidence of Oak Lawn's intended use of the property.

¶ 31 A defendant is entitled to summary judgment where it is shown that the plaintiff is not owed a duty of care. *O'Hara*, 137 Ill. 2d at 337. It is also appropriate where a plaintiff fails to establish an element of a cause of action. *Pyne*, 129 Ill. 2d at 358. In this case, Dunet failed to show that decedent was an intended user of 95th Street at its intersection of Kenton Avenue in Oak Lawn, Illinois. Accordingly, Dunet failed to show that decedent was owed a duty. Therefore, the circuit properly entered summary judgment in Oak Lawn's and ComEd's favor.

¶ 32    We note that the circuit court additionally found that the darkened conditions created by the inoperable streetlights were a condition and not the proximate cause of decedent's death. However, because we hold that Dunet failed to establish that a duty was owed to decedent, we need not reach the issue of proximate cause.

¶ 33                                    CONCLUSION
¶ 34    The judgment of the circuit court is affirmed.

¶ 35    Affirmed.