NOTICE
Decision filed 09/07/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200291-U

NO. 5-20-0291

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| TINA M. TURNER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 19-L-12 |
| | ) | |
| THE CITY OF GRANITE CITY, | ) | Honorable |
| | ) | Sarah D. Smith, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Moore and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in granting the defendant's motion in favor of the defendant, the City of Granite City, as a matter of law where the plaintiff failed to establish that the city owed a duty to her under section 3-102 of the Local Governmental and Governmental Employees Tort Immunity Act.

¶ 2    The plaintiff, Tina M. Turner, brought an action against a municipality, the defendant, the City of Granite City, seeking damages for injuries sustained after she stepped into a pothole and broke her ankle while crossing a street in Granite City. The defendant moved to dismiss the plaintiff's complaint, arguing that it owed no duty to the plaintiff, who was neither an intended nor a permitted user of the area of the street where she was injured. The trial court granted the defendant's motion to dismiss the complaint,

1

and the plaintiff appealed. For the following reasons, we affirm the decision of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4     At approximately 4 p.m. on December 1, 2018, the plaintiff and her brother met at the plaintiff's apartment in Granite City. They began walking to a nearby Taco Bell restaurant for dinner. It was raining lightly, and sleeting, as the two walked down the sidewalk along 22nd Street and approached a T-intersection at Iowa Street. When the plaintiff stepped off the curb into the street near the intersection of 22nd Street and Iowa Street, she stepped into a pothole filled with leaves and rainwater. As the plaintiff started to fall, her brother caught her, but the plaintiff felt a pop as her right ankle twisted. After the plaintiff fell, she sought medical care and learned she had suffered a fracture to her right ankle.

¶ 5     On January 4, 2019, the plaintiff filed a complaint against the defendant in the circuit court of Madison County, seeking damages for the injuries she sustained from her fall. The plaintiff alleged that the defendant was negligent for failure to inspect the crosswalk area, failure to maintain or repair the crosswalk area, and/or failure to warn of the condition of the crosswalk area where the plaintiff injured her ankle.

¶ 6     On January 23, 2019, the city filed an answer and affirmative defenses. The city generally denied the allegations of negligence, and also denied that the plaintiff was an intended user of the crosswalk. In its affirmative defenses, the city alleged that the plaintiff's complaint failed to state a claim upon which relief could be granted.

¶ 7    On February 11, 2020, the city filed a motion to dismiss the plaintiff's complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2018)). In its motion, the city claimed that, under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-102 (West 2018)), municipalities, such as itself, had no duty to safeguard the street where the plaintiff fell. In its motion, the defendant argued that the plaintiff had acknowledged there was no marked crosswalk where she attempted to cross the street.[1] The defendant asserted that it never intended for pedestrians to cross its streets outside of designated crosswalks, and that the plaintiff could not establish that she was an intended user of the area of 22nd Street where she fell. In support of its motion, the defendant attached excerpts of the plaintiff's deposition, along with four photographs. Also, attached to the defendant's motion were three Granite City ordinances related to crosswalks and an affidavit from the mayor of Granite City.

¶ 8    On April 7, 2020, the plaintiff filed a response in opposition to the city's motion to dismiss, along with a supporting memorandum. Attached to the response were excerpts from the plaintiff's deposition, photographs of an alley near the plaintiff's apartment that intersected with 22nd Street, an additional seven photographs of the streets nearby, and a recently adopted local ordinance for Granite City. The plaintiff argued that she had crossed at a crosswalk, and that the defendant owed her a duty, even if the crosswalk was not marked. She emphasized that there was no requirement for a crosswalk to be painted on

---

[1]Plaintiff gave a deposition on January 23, 2020, wherein she offered testimony regarding the circumstances of her crossing 22nd Street.

the street under section 1-113 of the Illinois Vehicle Code (Code) (625 ILCS 5/1-113 (West 2018)). Under the Code, plaintiff argued it was the law that "a crosswalk need not be painted or marked on the surface of the street to constitute a statutory crosswalk but at any intersection the extensions of sidewalk lines over the streets are regarded as crosswalks." The plaintiff also argued that the defendant's amendment to one of its ordinances, after the fact of plaintiff's injury, requiring pedestrians to use "marked" crosswalks, supported her theory that the city intended pedestrians to use statutory, "unmarked" crosswalks prior to that amendment.

¶ 9    In the deposition excerpts, the plaintiff acknowledged that some of the photographs showed pictures of nearby intersections at each end of 22nd Street with designated crosswalks, marked with striping and slanted curbs. These markings were not present at the location where the plaintiff attempted to cross 22nd Street. The plaintiff also testified that she was not paying attention when she stepped off the curb and into the pothole where she broke her ankle.

¶ 10    The photos used by the parties in the plaintiff's deposition also included a satellite overview of the neighborhood, and pictures of the location where the plaintiff was injured, which was located near the T-intersection at Iowa Street and 22nd Street. The photos of the T-intersection showed curbs on both sides of the roadway where the plaintiff intended to cross. The opposite side of the roadway had a section of grass along the curb between the street and the sidewalk. The photos did not reveal any markings indicating the presence of a marked crosswalk. There were no stop signs or sloped curbs in the area where the

4

plaintiff chose to cross. During her deposition, the plaintiff identified the location where she fell and circled the spot in the road where she broke her ankle.

¶ 11    At the time the plaintiff was injured, the defendant had a local ordinance that was entitled, "Prohibited Crossing." Granite City Municipal Code § 10.22.040 (eff. 1979). Granite City amended its ordinance on March 3, 2020, after the plaintiff filed her lawsuit. In the plaintiff's memorandum, she relied upon the amendment to the ordinance. The plaintiff argued that the city inserted the word "marked" before the term "crosswalk," and that by doing so, the city was admitting that its prior ordinance allowed pedestrians to cross at unmarked crosswalks.

¶ 12    During the hearing on the defendant's motion to dismiss, the city pointed out that the incident occurred near the intersection of 22nd Street and Iowa Street, and defense counsel offered the photographs depicting the location where the plaintiff fell. The defendant argued that the Tort Immunity Act limited a municipality's duty to maintain the property and that a municipality's duty extended only to those who were intended and permitted users of the property. In particular, the city emphasized that even if the court found that the plaintiff crossed in an unmarked, statutory crosswalk, such a finding would only mean that the plaintiff was a permitted user, not both a permitted and intended user. The defendant also relied upon the affidavit from the mayor which averred that the city intended to allow pedestrians to cross only in marked crosswalks, and the street was to be used and maintained for vehicular traffic. In addition, the defendant argued that the cost for maintaining every intersection suitable for pedestrians to cross was too expensive for the city to maintain.

5

¶ 13    In her argument, the plaintiff responded that section 1-113 of the Code defined a statutory crosswalk as an area marked with lateral lines extending from the sidewalk, as well as those sidewalks without marked lines. The plaintiff stated that because she crossed the street in a "statutory crosswalk," as defined by the Code, she was an intended and permitted user of the crosswalk. Therefore, she was owed a duty of care by the defendant. In addition, the plaintiff reasserted her arguments of being an intended user based on the defendant's amendment to its ordinance to add the term "marked" in front of "crosswalks." She concluded that it was illogical to walk an additional block to the marked crosswalk at the end of the block before crossing 22nd Street because it would have been in the opposite direction, and she would have had to cross an unmarked alley.

¶ 14    After hearing the arguments of the parties, the trial court took the matter under advisement. On September 17, 2020, the court entered an order granting the defendant's motion to dismiss. In its order, the trial court found that the plaintiff crossed in a statutory crosswalk, but that this designation only made the plaintiff a permitted user of the street. The court made specific findings that "[t]here were no sloping curbs, painted surfaces, curb cuts or other paved walkways to the surface of the adjacent street where Plaintiff identified she crossed." The trial court also found that nearby intersections at each end of 22nd Street had white paint and sloped curbs which demonstrated the intended purpose for pedestrians to cross the street at those locations.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, the plaintiff claims that the trial court erred in granting the city's motion to dismiss because the defendant, a local public entity, had a duty to repair and maintain

6

the statutory crosswalk where the plaintiff stepped into a pothole and broke her ankle. In response, the defendant argues that tort immunity applies; therefore, it did not have a duty to repair an unmarked crosswalk because it did not intend for pedestrians to cross the road where the plaintiff fell, even if the plaintiff was considered a permitted user of the street.

¶ 17    In an action for negligence, a plaintiff must establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury to the plaintiff proximately caused by the breach to recover damages. *Harden v. City of Chicago*, 2013 IL App (1st) 120846, ¶ 16. The city sought dismissal pursuant to both section 2-615 and section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2018)) and claimed that the plaintiff could not establish that a duty was owed to her under the Tort Immunity Act. A motion to dismiss pursuant to section 2-615 attacks the legal sufficiency of a complaint, and a motion to dismiss pursuant to section 2-619(a)(9) admits the sufficiency of a complaint but asserts an affirmative matter defeating the claim. *Torres v. Peoria Park District*, 2020 IL App (3d) 190248, ¶ 16. Statutory immunity is an affirmative matter to be considered under section 2-619(a)(9) alone. *Williams v. Board of Education of the City of Chicago*, 222 Ill. App. 3d 559, 562 (1991). We review a section 2-619 dismissal *de novo*. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003).

¶ 18    The defendant is a local public entity. In determining whether the defendant owed a duty of care to the plaintiff, we look to section 3-102 of the Tort Immunity Act (745 ILCS 10/3-102(a) (West 2018)). Section 3-102 provides, in relevant part:

> "(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and

permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2018).

¶ 19 The Tort Immunity Act is in derogation of the common law and strictly construed against the public entity. *Curatola v. Village of Niles*, 154 Ill. 2d 201, 208 (1993). Under the Tort Immunity Act, municipalities have a duty to exercise ordinary care to maintain property for intended and permitted uses; no duty will be imposed unless plaintiff is both permitted and intended user. *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 160 (1995). An intended user of property is also a permitted user; but a permitted user is not necessarily an intended user. *Boub v. Township of Wayne*, 183 Ill. 2d 520, 525 (1998).

¶ 20 In general, a municipality does not have a duty to maintain the streets to a standard of care for pedestrian use since pedestrians are not the intended users of a street. *Curatola*, 154 Ill. 2d at 210. Illinois municipalities are currently charged with the duty to use ordinary care to make crosswalks safe for pedestrian use, such as marking a crosswalk on the street for pedestrian use, where municipalities manifestly intend that pedestrians will use the crosswalk. *Vaughn*, 166 Ill. 2d at 164; *Sisk v. Williamson County*, 167 Ill. 2d 343, 347 (1995). The cost of making all public streets and roadways reasonably safe for unrestricted pedestrian use would be an extreme burden on municipalities with limited resources. *Vaughn*, 166 Ill. 2d at 164. Therefore, municipalities have no duty to maintain property for pedestrians where the pedestrians are outside of marked crosswalks or other areas designated and intended for the protection of pedestrians. *Sisk*, 167 Ill. 2d at 348.

¶ 21   In this case, it is undisputed that the plaintiff did not cross in a marked crosswalk. Therefore, we must consider whether the plaintiff was an intended user of the property where the plaintiff attempted to cross 22nd Street to establish if the defendant owed the plaintiff a duty of care. The nature of the property itself determines if the plaintiff was an intended user of the street where she injured herself in a pothole. *Vaughn*, 166 Ill. 2d at 163; *Sisk*, 167 Ill. 2d at 351 ("Intent must be inferred from the circumstances. We need look no further than the property itself to determine the municipality's manifestations of intent with regard to use of the property by pedestrians."). The nature of the property, the pavement markings, signs, and other physical manifestation of the intended use of the property must be considered to determine if the defendant had a duty to maintain the road for pedestrian use where the plaintiff fell. *Dunet v. Simmons*, 2013 IL App (1st) 120603, ¶ 30.

¶ 22   The plaintiff argued that she was in an "unmarked crosswalk" according to section 1-113(a) of the Code, which states a crosswalk is:

> "That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or, in the absence of curbs, from the edges of the traversable roadway, and in the absence of a sidewalk on one side of the highway, that part of the highway included within the extension of the lateral line of the existing sidewalk to the side of the highway without the sidewalk, with such extension forming a right angle to the centerline of the highway[.]" 625 ILCS 5/1-113(a) (West 2018).

According to the definition in the Code, and our review of the black and white photographic exhibits, it is difficult to determine if the plaintiff stepped into a pothole that was within an "unmarked crosswalk." Nevertheless, as the defendant argued, crossing in an unmarked crosswalk, as defined by the Code, only showed a permitted use of the intersection, at best,

9

and being a permitted user does not automatically make a pedestrian an intended user. *Dunet*, 2013 IL App (1st) 120603, ¶ 30.

¶ 23    Here, the plaintiff crossed near a T-intersection at Iowa Street and 22nd Street. The photographs show the curb that the plaintiff had to step down from in order to access the street. The intersection did not have a stop sign or a painted crosswalk, and there was no connection to a sidewalk on the opposite side of 22nd Street. Because there was no sidewalk connection, a pedestrian would also have to step up and over a curb and then cross a grass section to reach a sidewalk on the opposite side of the crossing. In comparison, the nearby intersections showed that the defendant intended for pedestrians to cross where they had installed stop signs, modified the sidewalks to have sloped curbs into the intersection, and painted crosswalks across the intersections.

¶ 24    The plaintiff in *Dunet* brought a wrongful death action and survival action against a municipality alleging negligence, after a pedestrian was killed in an automobile accident while crossing the street at an intersection. *Dunet*, 2013 IL App (1st) 120603, ¶ 5. The intersection was not marked, the curb was painted yellow, it was not cut out or sloped for pedestrian access to the street, and the intersection was a busy, high-volume street with six lanes of traffic. *Dunet*, 2013 IL App (1st) 120603, ¶ 29. The intersection in both *Dunet*, and in the case at hand, did not have the same features as the nearby intersections which were equipped with traffic signals and marked crosswalks, intended for pedestrian crossings. *Dunet*, 2013 IL App (1st) 120603, ¶ 29. Therefore, based on the appearance of the place where the plaintiff stepped off the curb, the city did not have the intent for pedestrians to cross at the unmarked crosswalk. *Dunet*, 2013 IL App (1st) 120603, ¶ 29.

10

¶ 25    The plaintiff argued that her case should be distinguished from the *Dunet* case because she lived in a quiet neighborhood, and it was not an area of heavy traffic. She additionally argued that it was unreasonable for her to have walked in the opposite direction that required her to cross an alley to reach a marked crosswalk. However, foreseeability alone under section 3-102(a) of the Tort Immunity Act does not establish whether a duty of care exits. *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 428 (1992). In *Wojdyla*, even though the plaintiff argued it would be unreasonable to expect pedestrians to walk a mile, round trip, to use a crosswalk, the city did not intend for pedestrians to cross outside of a crosswalk. *Wojdyla*, 148 Ill. 2d at 428. Tort immunity applies to intended and permitted foreseeable users, not solely foreseeable users. *Wojdyla*, 148 Ill. 2d at 428. Additionally, pedestrians have been found to be intended users of the area where a sidewalk intersects an alley, so having to cross an alley to reach a marked crosswalk had no bearing on the city's intent. *Kavales v. City of Berwyn*, 305 Ill. App. 3d 536, 544 (1999). When considering the nature of the intersection, the plaintiff has not established that the defendant intended for pedestrians to cross the road at the T-intersection, even though it may have been foreseeable that pedestrians would avoid walking out of their way to use a marked crosswalk at the end of 22nd Street.

¶ 26    We also disagree with the plaintiff's argument that the city's ordinances established an intent by the defendant for pedestrians to cross 22nd Street at the T-intersection. The defendant's local ordinance defines "crosswalk," and that definition does not mirror the Illinois Vehicle Code's definition. Granite City Municipal Code § 10.22.060 (eff. 1979) defines "crosswalk" to mean:

11

"A. That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or in the absences of curbs, from the edges of the traversable roadway; or
B. Any portion of the roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface."

The plain meaning of the city's definition of crosswalk requires a sidewalk connection on the opposite side of the road for it to be considered an "unmarked crosswalk." Since there was no sidewalk connection on the opposite side of the road from where plaintiff stepped into the street, there was no unmarked crosswalk at the T-intersection. The defendant did not have a duty to maintain the area where the plaintiff fell, when that area, based upon the ordinance, was not intended to be a crosswalk.

¶ 27   The plaintiff also argued that the defendant's postaccident amendment to the "Prohibited Crossing" ordinance as establishing that the plaintiff was an intended user of the unmarked crosswalk at the time of her injury. We disagree. The city inserted the word "marked" in front of the term "crosswalk" in the "Prohibited Crossing" ordinance. Granite City Municipal Code § 10.22.040 (adopted Mar. 3, 2020). That ordinance now reads: "between adjacent intersections at which traffic control signals are in operation, pedestrians shall not cross at any place except in a marked crosswalk. No pedestrian shall cross a roadway other than in a marked crosswalk in any business district." The amendment to the ordinance to add the word "marked" to designate the crosswalk had no effect on a pedestrian crossing 22nd Street when the municipality's definition of crosswalk, marked or unmarked, did not apply to that T-intersection.

¶ 28   The plaintiff has not established that she was an intended and permitted user of the area of 22nd Street where she fractured her ankle. Specifically, the plaintiff cannot maintain

12

a cause of action for negligence without establishing that the plaintiff is owed a duty of care. *Dunet*, 2013 IL App (1st) 120603, ¶ 31. The defendant intended pedestrians to cross at both ends of the 22nd Street block, as evidenced by the stop signs, painted crosswalks on the pavement, and modifications of the sidewalk to slope into the intersection. The plaintiff has not shown that the defendant had a similar intent for pedestrians to cross 22nd Street at an unmarked area, without a sloped or cut curb, that did not directly connect to a sidewalk on the other side of the road. Since the plaintiff has not shown she was an intended user of the intersection where she fell, she cannot show that she was owed a duty by the defendant; therefore, she cannot maintain a cause of action for negligence. Accordingly, the trial court properly granted the defendant's motion to dismiss.

¶ 29                         III. CONCLUSION

¶ 30    The judgment of the trial court is affirmed.

¶ 31    Affirmed.